IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| DEEP MARINE HOLDINGS, INC., Et al. | § § § | Case No. 09-39313 |
| | § § | Jointly Administered |
| Debtors. | § | Chapter 11 |

| | | |
|---|---|---|
| DEEP MARINE 1, LLC, | § § | |
| Plaintiff, | § § § | |
| v. | § § | Adversary No. 10-03271 |
| THE DEEP MARINE LIQUIDATING TRUST (AS SUCCESSOR TO DEEP MARINE TECHNOLOGY INCORPORATED, DEEP MARINE HOLDINGS, INC., DEEP MARINE 1, LLC, DEEP MARINE 2, LLC, DEEP MARINE 3, LLC, AND DEEP MARINE 4, LLC); ET AL. | § § § § § § § § § § | |
| Defendants. | § | |

**GENERAL ELECTRIC CAPITAL CORPORATION'S REPLY TO OTTO CANDIES, LLC's OPPOSITION TO GENERAL ELECTRIC CAPITAL CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

General Electric Capital Corporation ("GE") files this Reply to Otto Candies, LLC's Opposition to General Electric Capital Corporation's Motion for Partial Summary Judgment and, in support thereof, states as follows:

### INTRODUCTION

1. GE has filed its Motion for Partial Summary Judgment ("Motion") on the basis that Otto Candies, LLC's ("Otto Candies") alleged maritime lien for crewmen's

wages is invalid under applicable maritime law or, in the alternative, Otto Candies is estopped from asserting a preferred maritime lien. GE argues, in the further alternative, that if the Court finds that Otto Candies' wage claim is valid, it should be limited based on the "dead ship" doctrine. All that GE is required to show in order to obtain summary judgment on Otto Candies' alleged maritime lien for crewmen's wages is that (1) Otto Candies was a shareholder of the Debtors, (2) Otto Candies was not a stranger to the DMT Diamond.

2. Otto Candies, LLC's Opposition to GE's Motion for Partial Summary Judgment ("Opposition") is unsubstantiated and contains blatant misstatements of fact and law.

3. Otto Candies' so-called evidence in support of its Opposition consists of: (1) the self serving affidavit of Otto Candies III, (2) the Vessel Operating Agreement; and (3) its Amended Proof of Claim. When these three documents prove insufficient, Otto Candies makes conclusory statements which are often factually inaccurate without citing any source at all. Conversely, GE' Motion is based on the corporate records of the Debtors, Texas and Louisiana state records, documents executed by Otto Candies and the Debtors, correspondence to shareholders of the Debtors, loan documents, proofs of claim and other related documents to prove the facts in this case.

4. Otto Candies also provides a tortured interpretation of the Fifth Circuit *Sasportes* and *Equilease* cases and, in their stead, cites *The Gloucester* and *The Puritan*, outdated Massachusetts district court cases that do not accurately reflect the current state of maritime law in the Fifth Circuit.

5. In addition, Otto Candies now claims that its alleged liens for both crewman's wages and necessaries from 2008 and 2009 really arose on April 22, 2005, the date the Vessel Operating Agreement was executed by Otto Candies and DMT. This "relation-back" argument is fatal and the Court has no choice but to bar Otto Candies' alleged preferred maritime lien based on the 12 Month Rule under federal maritime law.

6. Although Otto Candies attempts to interject additional issues in its Opposition with respect to its alleged maritime lien for "necessaries," these arguments are irrelevant to consideration of GE's Motion. GE specifically stated that its Motion did not address Otto Candies' alleged maritime lien for "necessaries" because Otto Candies had conceded any such lien was junior to GE's preferred ship mortgage in its Answer.[1] As such, these arguments are irrelevant to the Motion.

## LAW AND ARGUMENT

7. Rule 56(e)(2) of the Federal Rules of Civil Procedure provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must … set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against the party.

Otto Candies' Opposition is devoid of any real evidence and relies solely on one of three documents or provides no evidentiary support at all in responding to GE's Motion.

**A.** **Otto Candies has not presented sufficient controverting evidence**

8. Otto Candies cites to the following three documents: (1) the self serving Declaration of Otto Candies III, (2) the Vessel Operating Agreement, or (3) Otto

---

[1] *See* Otto Candies' Answer and Amended Cross-Claim of Otto Candies, L.L.C. to the Amended Complaint to Interplead Funds, Etc. filed by Deep Marine 1, L.L.C. at 7. Otto Candies acknowledges that it did not allege a preferred maritime lien as to "necessaries" in its Answer and Cross Claim. Otto Candies contends that further research reflects it was wrong and intends to amend its Answer.

Candies' Amended Proof of Claim in 15 out of 22 footnotes referenced in its Opposition.[2] Otto Candies' reliance on these three documents is misplaced. Importantly, none of these documents disprove Otto Candies' status as a shareholder or the close business relationship between Otto Candies and the Debtors.

9. GE carefully drafted it's Motion with facts supported by the Debtors' corporate and business documents and proved the following: (1) Otto Candies was a shareholder and investor in Deep Marine Technology, Inc. ("DMT") and later, Deep Marine Holdings, Inc. ("DMH"), (2) Otto Candies, as a shareholder and investor, cannot assert a lien against its own vessel, (3) Otto Candies was intertwined with the Debtors and the operation of the Debtors' business, (4) Otto Candies III served on the Board of Directors, (5) the Board of Directors saw fit to elect Otto Candies, Jr. to chair an advisory committee for DMT; (6) Otto Candies was not a stranger to the DMT Diamond; (7) Otto Candies allowed a debt to accrue for four years without making any attempt to collect the debt; and (8) Otto Candies allowed the level of the debt to reach such a magnitude that it is barred from asserting its alleged lien.

10. Conversely, GE had meticulously and accurately cited and supported every fact alleged in its motion. In proving its entitlement to summary judgment GE relied upon the following documents:

      a. Documents from the Texas Secretary of State;
      b. Documents from the Louisiana Secretary of State;
      c. Notes to Projected Financial Statements;
      d. Timeline regarding involvement of Kazeminy in DMT and DMH;
      e. Minutes of Special Shareholders' Meetings;
      f. Deposition of Otto Candies;

---

[2] The only other documents referred to by Otto Candies include the appraisal of the DMT Diamond, the Confirmation Letter signed by Otto Candies on November 27, 2006, and GE's Proof of Claim.

    g.    Blanket Time Charter Agreement;

    h.    Letter to Shareholders;

    i.    Term Sheet;

    j.    Vessel Operating Agreement;

    k.    Numerous Minutes of Board of Directors Meetings;

    l.    Candies Senior Convertible Note;

    m.    Candies Mortgage;

    n.    Candies Note;

    o.    Otto Candies Amended Proof of Claim;

    p.    DMT's A/P Aging Summary;

    q.    DMT Board of Directors Meeting Agendas;

    r.    Agreement and Release of Mortgage;

    s.    Diamond Loan Agreement;

    t.    Diamond Note;

    u.    Diamond Mortgage;

    v.    Confirmation Letter executed by Otto Candies;

    w.    Vessel Purchase Agreements;

    x.    Assignment from Bender Shipbuilders to DM2;

    y.    Minutes of Executive Committee Meeting;

    z.    DMT's Diamond Repair Log;

    aa.    Otto Candies Responses to GE's Rule 2004 Request for Production;

    bb.    DMT Deficiency Report;

    cc.    GE's Proof of Claim No. 8;

    dd.    GE's Proof of Claim No. 3; and

    ee.    Affidavit of Dale Shores.

11.    Neither the Vessel Operating Agreement nor Otto Candies' Amended Proof of Claim create a genuine issue of material fact as to GE's Motion. Although Otto Candies attempts to contest some of the facts above with the Declaration of Otto Candies III, the Declaration is self-serving and conclusory hearsay, and contains no supporting documentation.

**B.     Otto Candies' Opposition is Factually Incorrect**

12.    Otto Candies' Opposition contains numerous misstatements of fact and mischaracterizes GE's Motion. These factual misstatements include the following:

**STATEMENT:**

"Neither Otto Candies, III nor anyone affiliated with Otto Candies has ever served as an officer of, nor have they been involved in the day-to-day management or operations, or any of the Debtor entities." Opposition at 2.

**CONTROVERTING FACT/ARGUMENT:**

Paul McKim's October 2004 letter to shareholders described Otto Candies, L.L.C. as a "strategic partner." *See* GE's Motion at 5 and Ex. 2 to Bittner Affid.

Otto Candies, Jr. and Otto Candies, III attended board meetings and executive committee meetings and Otto Candies III served as a Director of DMH. *See* GE's Motion at 9 – 10 and corporate minutes attached to Bittner Affid.

**STATEMENT:**

"Otto Candies, Jr. never accepted the appointment of chairman nor did he serve on any advisory board as suggested by the board minutes of 2004." Opposition at 2.

**CONTROVERTING FACT/ARGUMENT:**

The corporate records of DMT do not reflect that Otto Candies, Jr. declined this appointment. Even if he did (and the only evidence offered on this point is a hearsay statement from Otto Candies, III), the fact that the DMT Board elected Otto Candies, Jr. to an advisory board of the company indicates that DMT looked to Otto Candies, Jr. and his company for business advice, was willing to share confidential business information with Mr. Candies, and considered Otto Candies much more than a third party vendor that provided services to DMT.

**STATEMENT:**

"Otto Candies has never owned a controlling interest in the Debtors, nor was Otto Candies ever involved in the day-to-day management or operations of the Debtors." Opposition at 3.

**CONTROVERTING FACT/ARGUMENT:**

Otto Candies and DCC Ventures, LLC were each 50% shareholders in Deep Marine Holdings, Inc. on the Petition Date. *See* DMH's Statement of Financial Affairs (attached hereto as Exhibit "1"). As such, both entities controlled the debtors.

**STATEMENT:**

"Thus, both National City and its successor, GE, clearly had knowledge that there was an operating agreement, and attendant preferred maritime liens, that pre-dated its mortgage." Opposition at 5.

**CONTROVERTING FACT/ARGUMENT:**

This is a baseless and unsubstantiated allegation. Otto Candies cannot testify as to what National City did or did not know at the time of the origination of the loan unless they made statements or provided documents evidencing their liens to National City or witnessed others make such statements or provide such documents to National City. The fact that there was a Vessel Operating Agreement in effect does not create a presumption that there were liens on the DMT Diamond. A lien only exists to the extent there are unpaid debts. Is Otto Candies admitting there were unpaid invoices for crewmen's wages at the time of the funding of the Diamond Loan and, therefore, liens on the vessels? If so, how did Otto Candies recite in its November 27, 2006 letter to National City that DM1 had "no further obligations to or liabilities of any kind to Otto Candies"? *See* Ex. 4 to Shores Affid.

**STATEMENT:**

"With respect to the sale of other vessels to the Debtors, these were all commercial arms-length transactions that are not material to the validity of Otto Candies' preferred maritime lien on the DMT Diamond." Opposition at 5.

**CONTROVERTING FACT/ARGUMENT:**

Why did the Debtors buy all four vessels from one company – *i.e.*, Otto Candies? Why did 3 out of the 4 transactions involve sales of the vessels in exchange for stock in DMT rather than cash? How can Otto Candies suggest that a sale of 3 vessels in exchange for stock in DMT is a typical commercial arms-length transaction? The answers to these questions is apparent – Otto Candies chose to invest in DMT rather than enter into cash sales. Otto Candies is a sophisticated company and would not have invested money in a closely held company it was not familiar with.

These transactions are "material" to the validity of its liens because these transactions evidence that Otto Candies was looking to the credit and anticipated financial success of DMT (*i.e.*, the entity with whom it was investing) rather than the credit of the vessel.

**STATEMENT:**

"With respect to the outstanding invoices for crew wages, GE alleges on page 6 of its Motion for Partial Summary Judgment that almost immediately after entering into the Vessel Operating Agreement on the DMT Diamond, Otto Candies began accruing unpaid crewman's wages with respect to the vessel, suggesting that there was some type of nefarious scheme being carried out. However, the records of the amounts owed to Otto Candies, which are attached to Otto Candies' Amended Proof of Claim, clearly show that only one unpaid invoice dates back to December 2006. . . ." Opposition at 5-6.

"Otto Candies was paid for the crewing and services provided to DMT on a regular basis until the latter part of 2007." Opposition at 7.

**CONTROVERTING FACT/ARGUMENT:**

Otto Candies' proof of claim filed in the Debtors' bankruptcy cases is not proof of payment of prior invoices. Indeed, GE attached to its Motion an Accounts Payable Report of DMT which showed that Otto Candies was owed almost $5.4 million as of November 6, 2006, immediately before the closing on the Diamond Loan. If the only contract between the parties was the Vessel Operating Agreement, this debt presumably arose under the Vessel Operating Agreement. Otto Candies does not dispute the Accounts Payable Report, explain how this debt was "paid" by the Debtors less than 30 days later at the closing on the Diamond Loan, or offer any proof of payment which it should readily be able to show through its own business records if that were the case. *See* Motion at 7 and Ex. J to the Motion.

**STATEMENT:**

"GE clearly had knowledge, or should have had knowledge, of the debt, as GE was entitled to receive regular financial information on the Debtor including the sums owed by the Debtors." Opposition at 14.

**CONTROVERTING FACT/ARGUMENT:**

Otto Candies has offered no evidence in support of this allegation. Regardless, GE's knowledge or lack of knowledge does not determine the validity of Otto Candies' alleged lien under applicable maritime law.

**STATEMENT:**

"In the case at bar, GE (1) knew of the Vessel Operating Agreement with Otto Candies for the crewing and provisioning of the DMT Diamond, (2) monitored and knew, or should have known, the financial problems of the Debtors, (3) knew the liens were accruing on the vessel, and (4) could have taken possession of the vessel under the terms of the mortgage, but instead chose to allow the Debtors to continue to slip further into debt at the expense of creditors such as Otto Candies." Opposition at 15.

**CONTROVERTING FACT/ARGUMENT:**

Again, Otto Candies has offered no evidence in support of this allegation. Regardless, GE's knowledge or lack of knowledge does not determine the validity of Otto Candies' alleged lien under applicable maritime law.

**STATEMENT:**

"… GE certainly had as much, if not more, knowledge of the Debtors' financial condition as Otto Candies had." Opposition at 16.

**CONTROVERTING FACT/ARGUMENT:**

Again, Otto Candies has offered no evidence in support of this allegation. Regardless, GE's knowledge or lack of knowledge does not determine the validity of Otto Candies' alleged lien under applicable maritime law.

13.  These are mere examples of the allegations throughout Otto Candies' Opposition that have no foundation. This is improper evidence according to Rule 59 that provides as follows: "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must … set out specific facts showing a genuine issue for trial." Based upon the foregoing, Otto Candies has failed to create a genuine issue of

material fact to defeat GE's Motion and, on these grounds, GE's Motion should be granted.

### 2. TORTURED INTERPRETATION OF *SASPORTES* AND *EQUILEASE*

14. In its Motion, GE describes with supportive documentation the history of the relationship between Otto Candies and the Debtors, the level of stock ownership, the level of investment, the level of control, and level of Otto Candies' involvement with the Debtors. These facts establish that Otto Candies was no "stranger" to the vessel. GE further shows that Otto Candies allowed the debt of the vessel to increase without ever making a written attempt to collect the debt or enforce a lien, which is all but admitted by the lack of such evidence produced by Otto Candies. GE will not reargue all of these points which are thoroughly briefed in its Motion.

15. The most telling defect in Otto Candies' Opposition is its misstatement of applicable maritime law. For example, Otto Candies claims:

> Generally, the only exception to the maritime law of advances is that the owner of the vessel cannot acquire a maritime lien against its own vessel. This exception also applies to those who enter into a joint venture with the owner of the vessel, <u>and in very limited situations, to a shareholder when the shareholder is actively engaged in the management and control of the vessel owner's affairs.</u> Opposition at 22 (emphasis added).

Contrary to Otto Candies' Opposition, the *Sasportes* case and its progeny do not add the requirement that the shareholder be actively engaged in the vessel owner's business. Rather, the test is whether or not the lienholder was a "stranger" to the vessel, as discussed in GE's Motion. Elsewhere, Otto Candies also states:

> "The mere fact that the party claiming the maritime lien also has an exclusive working relationship with the vessel does not invalidate the party's lien, nor does the fact that a party owns stock in the vessel-owning

corporation, in and of itself preclude that party from asserting a maritime lien against the vessel." Opposition at 11.

Notably, Otto Candies does not cite any support for this proposition.

16. In general, Otto Candies' relies on *The Gloucester,* 285 F. 579 (D.Mass. 1923) and *The Puritan*, 258 F. 271 (D. Mass. 1919) in support of its Opposition, which accounts for the erroneous statements of maritime law. Otto Candies cites these outdated Massachusetts district court cases to challenge the Fifth Circuit's ruling in *Sasportes* v. *M/V Sol de Copacabana*, 581 F.2d 1204 (5th Cir. 1978) and the decision of *In re Seascape*, 191 B.R. 944 (S.D.Fla. 1995) from the Eleventh Circuit. *The Gloucester* and *The Puritan* cases do not apply in this suit for a number of reasons: (1) both are district court cases from Massachusetts and are not Fifth Circuit law, (2) *The Puritan* was decided in 1919, prior to the enactment of the federal Ship Mortgage Act, and (3) most importantly, both courts recognized that, in most situations, shareholders in a company owning a vessel cannot claim a maritime lien.

17. Moreover, although the courts in both *The Gloucester* and *The Puritan* found maritime liens, the same courts determined that the parties seeking to enforce the lien were effectively "strangers to the vessel," without using the exact words. In *The Puritan*, 258 F. at 272, the Court noted the claimants had not "taken advantage of the fiduciary position," and had notified the master they were relying on the credit of the vessel because "there was not certainty that the owner … ever would have funds with which to repay" the claimants. Similarly, in *The Gloucester*, 285 F. at 580, the Court found "the officers of the Fisheries Company took no part in the actual management of the Gloucester, and the persons who bought supplies for her were not connected with the Fisheries Company." *Id.* at 582.

18.     Otto Candies' cited cases are inapplicable in this Circuit and should not be considered controlling law in this suit.  However, if this court were to consider the rulings of *The Gloucester* and *The Puritan*, it is important to note that in both cases the courts found that the lienholder was a "stranger to the vessel."  In contrast, GE's Motion refers to documents that prove the following: Otto Candies was the previous owner of the DMT Diamond as well as the Debtors' other three vessels; three out of the four vessels were sold in exchange for stock in DMT, which supports that Otto Candies was relying on the financial condition and credit of DMT; the terms of the Vessel Operation Agreement required Otto Candies to manage and find potential customers for the vessel; Paul McKim termed the relationship between Otto Candies and the Debtors a "strategic partnership;" and Otto Candies, Jr. and Otto Candies III took an active role in DMT's management and attended Executive Committee and Board Meetings, etc.  All of these facts show that Otto Candies was anything but a stranger to the DMT Diamond and the Debtors and was intimately involved with the operation of the vessel by the Debtors by 2006.

19.     Unable to rebut these facts, Otto Candies argues instead that its maritime liens "relate back" to 2005 (before it became a shareholder) in order to distance itself from the Debtors.  Otto Candies also attempts to distance itself by claiming it "never owned a controlling interest in the Debtors" (*See* Opposition at p. 3), despite the fact it owned 50% of DMH on the Petition Date.[3]  Otto Candies argues unintelligibly that its acquisition of the Debtors' stock occurred "over time in a series of very different and

---

[3]  Otto Candies attempts to distinguish crewing all four of the Debtors for DMT's customers from "day-to-day management or operations of the Debtors."  (See Opposition at p. 3).

unrelated transactions," ignoring the fact that all of these transactions were with DMT, the parent of DM1.

20. Finally, Otto Candies attempts to shift the burden and corresponding blame to GE for DMT's alleged failure to pay Otto Candies' invoices for crewmen's wages. Otto Candies alleges that GE received its debt service on the Diamond Loan and knew or should have known that DMT was not paying its operating expenses for the DTM Diamond. GE's receipt of loan payments due under the Diamond Loan Documents is irrelevant.

21. In short, Otto Candies has offered no authority that would challenge the well-settled maritime law in the Fifth Circuit set forth in GE's Motion. For these reasons, GE's Motion should be granted.

### 3. IN THE ALTERNATIVE, THE COURT MUST BAR THE ALLEGED PREFERRED LIEN

22. Otto Candies spends much of its effort in its Opposition arguing the priority of its lien rather than attempting to prove its validity, which is the threshold issue. Nevertheless, in the alternative, and only if this Court finds that Otto Candies has a valid maritime lien, which GE vehemently denies, Otto Candies' entire lien is barred based on laches, i.e. the "12 Month Rule," and Otto Candies knows it.

23. Otto Candies argues in its Opposition that under applicable Fifth Circuit law "a maritime lien attaches as of the commencement of the undertaking, and any subsequent breach for non-payment for services relates back to that time." Opposition at 10. Otto Candies then concludes that its lien for crewmen wages as well as necessaries arose on April 22, 2005, the date of execution of the Vessel Operating Agreement, notwithstanding that the crews upon which the maritime lien claims are based were

provided more than 2 ½ years after the date of execution of the agreement. While GE disagrees with Otto Candies' position on the "relation-back" of its liens, Otto Candies' argument, assuming it is valid, is fatal because of the "12 Month Rule."

A. **The 12 Month Rule Bars Otto Candies' Lien**

24. In *Patterson Shrimp Co. v. The O/S Freedom*, 211 F.Supp. 852 (S.D.Tex 1962), the United States District Court for the Southern District of Texas examined the issue of priority of liens that arise before and after the execution of a first preferred ship mortgage.

25. In *Patterson*, the services and supplies giving rise to the claimed preferred maritime liens were furnished during April of 1960. *Id.* at 853. The preferred ship mortgage was executed on January 21, 1961, recorded by the Collector of Customs, and endorsed on the ship's documents. *Id.* Partial payments in connection with the services and supplies provided were made by the vessel owner on September 13, 1960, December 1, 1960, and July 29, 1961. *Id.*

26. The Texas district court in *Patterson* reviewed the "12 Month Rule" which mandates that a maritime lien must be perfected within the 12 months preceding the mortgage. Under the 12 Month Rule, any unperfected lien that predates the mortgage by more than 12 months is barred by laches.

27. To determine the methodology for applying the 12 Month Rule, the *Patterson* court considered the rulings in two separate cases: (1) *Gulf Coast Marine Ways, Inc. v. the J.R. Hardee*, 107 F.Supp. 379 (S.D.Tex. 1952) and *National Shawmut Bank v. The Winthrop, & c.*, 134 F.Supp. 370 (D.C. Mass. 1955).

28. The *Patterson* court found that that Judge Allred, in the earlier Texas case, *Gulf Coast*, "held that preferred maritime lienholders who had taken no steps to perfect their liens for more than one year before the original libel[4] was filed, lost their priority over a subsequent preferred ship mortgage." *Patterson,* 211 F. Supp. at 853.

29. The Patterson court also examined the case of *National Shawmut Bank v. The Winthrop, & C.*, 134 F.Supp. 370 (D.C. Mass. 1955), in which the Massachusetts district court analyzed the expectations of a lienholder prior to the existence of the mortgage, the expectations of the mortgage holder, and the expectation of a lienholder having a lien arise after the mortgage. The *National Shawmut* court held that that preferred lienholders would not be barred unless they were guilty of laches at the date of the mortgage by having failed to perfect the lien within 12 months before the date of the mortgage. *Patterson*, 211 F.Supp. at 853.

30. The *Patterson* court concluded that it "must choose between the two applications of the 12 month rule and determine whether a maritime lien will be barred by laches if it is not perfected within 12 months preceding the filing of a libel against the vessel, or by laches within 12 months preceding the date of the mortgage." It chose the *National Shawmut* analysis that a maritime lien must be perfected within the 12 months preceding the mortgage or it would be barred by laches. The *Patterson* court concluded that the ranking of liens based on the 12 Month Rule should be as follows:

    a.    All court costs, including sums advanced by the parties, respectively;

    b.    The ante-mortgage liens arising within the twelve months preceding the date of the mortgage;

---

[4] Prior to 1966, a libel was the "initiatory pleading in an admiralty action" which corresponded to the complaint. *See* Black's Law Dictionary at 904 (Fifth Edition 1979).

      c.      The mortgage;

      d.      Any post-mortgage liens on the calendar year basis.

31.     Based on the foregoing, any preferred lien that predates the mortgage by more than 12 months is barred by laches, i.e., the 12 Month Rule.

32.     In Otto Candies' Opposition, it cites *Bank One, Louisiana v. Mr. Dean M/V* for the proposition that a maritime lien attaches as of the commencement of the undertaking, and any subsequent breach for non-payment of services relates back to that time. Based on this decision, Otto Candies asserts its entire alleged maritime lien existed as of April 22, 2005 and, therefore, "its maritime lien pre-dates GE's preferred ship mortgage." Opposition at 10.

33.     There is absolutely no evidence, other than Otto Candies III's self serving Declaration, that Otto Candies made any attempt to enforce a lien during the 12 months preceding the filing of GE's preferred ship mortgage or afterwards to collect the debt now being asserted as an alleged maritime lien against the DMT Diamond. Under the 12 Month Rule, Otto Candies should have perfected its lien between November 2005 and November 2006. In fact, the first time Otto Candies asserted that it had an alleged maritime lien was when it filed its Proof of Claim and Notice pursuant to 11. U.S.C. 546(b) on February 19, 2010. It did not attempt to add the necessaries to its alleged preferred lien until 11 months later, on January 19, 2011, when it filed its Opposition to GE's Motion to Disburse Undisputed Funds. Thus, there is not a single shred of evidence that Otto Candies made any attempt to perfect or enforce an alleged lien in the 12 months preceding the date of the GE's mortgage.

34.     GE's mortgage was executed on November 30, 2006, approximately 20 months after the signing of the Vessel Operating Agreement between Otto Candies and

DMT. Due to Otto Candies' claim that its entire alleged preferred lien relates back to April 22, 2005, even if this court finds that Otto Candies has a valid preferred maritime lien, which GE vehemently denies, Otto Candies' entire preferred lien is barred by laches, i.e, the 12 Month Rule.

**B.      GE Knew Its Like Would be Effected by the 12 Month Rule**

35.     What is most shocking about Otto Candies' attempts to assert a lien that it claims arose on April 22, 2005, is that it knew its alleged lien would be subject to the 12 Month Rule, yet misrepresented the extent of its secured claim in its proof of claim and other documents filed in the Debtors' bankruptcy cases. The result of Otto Candies pursuit of a lien amount that is contrary to maritime law forced GE and others to incur unnecessary attorney's fees and costs in defending Otto Candies' lien, and it wasted the judicial resources of this Court.

36.     In a letter dated January 26, 2010, from Karl Zimmerman to John Lee, prior co-counsel for GE, Otto Candies' counsel attached what it entitled "Otto Candies, LLC and Candies Shipbuilders, LLC (Creditors) – Bankruptcy Claim" (attached hereto as Exhibit "2"). The document references the Deep Marine Holding, Inc. – Bankruptcy Filing. Under the "Comments/Notes" section on the upper right-hand side of the document it provides "*Possible Maritime Lien ("net unreimbursed wages", **subject to 12 month rule**." Thus, Otto Candies knew its alleged lien was "subject to 12 month rule" but never made any adjustment it its alleged lien claim against the proceeds of DMT Diamond and continued to prosecute its claim in bad faith as if the 12 Month Rule did not exist. Only the Court can determine the consequences of this action.

WHEREFORE, GE respectfully requests that, this Court grant its Motion for Partial Summary Judgment against Otto Candies and find that Otto Candies' alleged maritime lien for crew wages is invalid. In the alternative, and only if this Court finds that Otto Candies has a valid maritime lien, GE requests that this Court issue a Judgment barring Otto Candies' preferred lien pursuant to the 12 Month Rule. In either case, GE seeks all further relief to which it may be entitled in law and equity.

>Respectfully submitted,
>
>ADAMS AND REESE LLP
>
>By: /s/ Susan C. Mathews
>    John Duck[*]
>    Federal Bar No. 17156
>    Susan C. Mathews
>    State Bar No. 05060650
>    FBN: 8479
>    Michael N. Mire
>    State Bar No. 24010757
>    FBN: 599148
>    4400 One Houston Center
>    1221 McKinney
>    Houston, TX  77010
>    Telephone:  (713) 652-5151
>    Facsimile:  (713) 652-5152
>
>***Attorneys for Defendant and Cross-Plaintiff, General Electric Capital Corporation***

---

[*] Admitted in the State of Louisiana.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served electronically via the Court's ECF notice (*unless otherwise noted) on all parties listed on the attached Service List and to those parties who are registered to receive ECF notice by the Clerk of this Court on this 22nd day of February, 2011.

/s/ Susan C. Mathews
Susan C. Mathews

**SERVICE LIST**

| | |
|---|---|
| *Counsel for Plaintiff – Deep Marine 1, LLC* <br> Jason G. Cohen <br> William Alfred Wood, III <br> Bracewell & Giuliani LLP <br> 711 Louisiana St, Ste 2300 <br> Houston, TX 77002 <br> 713-221-1416 <br> Fax : 713-221-1212 <br> Email: trey.wood@bgllp.com <br> Email: jason.cohen@bgllp.com | *Deep Marine Liquidating Trust* <br> John Bittner, Liquidating Trustee <br> Grant Thornton LLP <br> 1717 Main Street <br> Suite 1500 <br> Dallas TX 75201 <br> 214-561-2300 <br> Fax: 214-561-2370 <br> Email: John.Bittner@GT.com |
| *Counsel for Defendant – Otto Candies, LLC* <br> Thomas S. Henderson, III <br> Thomas S. Henderson, Attorney at Law <br> 711 Louisiana, Ste 3100 <br> Houston, TX 77002 <br> 713-227-9500 <br> Fax: 713-620-3023 <br> Email: thenderson@tsh-atty.com <br><br> David Carrigee <br> Baldwin Haspel Burke & Mayer, LLC <br> 1100 Poydras St., Suite 2200 <br> New Orleans, Louisiana 70163 <br> 504-569-2900 <br> Fax: 504-569-2099 | *Defendant – NREC Power Systems, Inc.* <br> Bryan F. Chaisson <br> NREC Power Systems <br> CEO/Vice President <br> 5222 Hwy 311 <br> Houma, LA 70360-2878 <br> *via-first class mail* |